## Ressa-Nell Mining & Milling Company, Appellant, v. H. H. Pilander et al., Appellees.

VERDICTS—*when not disturbed.* A verdict not manifestly against the weight of the evidence will not be set aside on review.

Forcible entry and detainer. Appeal from the Circuit Court of Hardin county; the Hon. ENOCH E. NEWLIN, Judge, presiding. Heard in this court at the February term, 1908. Affirmed. Opinion filed March 4, 1909.

W. H. MOORE and D. G. THOMPSON, for appellant.

R. F. TAYLOR and JOHN C. OXFORD, for appellee; H. ROBERT FOWLER, of counsel.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This is an action of forcible entry and detainer brought by appellant against appellees, to recover possession of 40 acres of land, including the mineral estate and the mine and buildings located thereon in Hardin county, Illinois.

The facts in the case as they appear of record are substantially as follows: On December 15, 1899, Lewis Hamp owned the 40 acres of land in question and on that day he and his wife by a written instrument executed by them, granted, bargained, sold and conveyed to F. H. Haley, his successors or assigns, all the coal, iron ore, clay, oil, gas, and all other minerals which might be found on said premises and taken and removed therefrom within fifty years, for a consideration of one dollar in cash paid and 1/20 of all products of the land of the nature above mentioned. It was provided by said instrument that in case no work of development was done within three years from its date, the lease should be void, and also that for every acre of surface used by Haley he should pay $40, except for right of way for railroads and other roads

necessary in caring for and conveying the minerals produced to market.

On March 19, 1900, Haley assigned the lease to the Hardin Mineral Company. On November 17, 1902, the Hardin Mineral Company assigned its right, title and interest in this and all other leases held by it of mineral lands in Hardin and Pope counties, Illinois, to Nevin McConnell, who in turn on September 18, 1905, assigned his interest in this lease to E. C. Rose and J. W. Waggoner. No work was done under the lease until December 5, 1902, a few days before the expiration of the three years, when Nevin McConnell caused some men to go upon the premises to do work of development. These men were driven off by Lewis Hamp by threats of violence, but returned on December 9th or 10th and made several excavations, from one of which five or six hundred pounds of fluor spar was taken. Nothing further was done until the next spring when parties representing the McConnell interest again commenced work. A powder house, a shed over the mine and possibly other buildings were erected, the mine was dug down and timbered and about 200 tons of fluor spar were brought to the surface. The work which was continued until fall appears to have been carried on with the knowledge, and certainly without any actual resistance on the part of Lewis Hamp. Hamp refused to receive money proferred him as royalty but did accept a check for $40 from an agent of McConnell for an acre of ground, which was fenced off around the mining plant, being the amount agreed to be paid for every acre of the surface used, according to the terms of the original lease to Haley. In October, 1903, the work ceased and Sullivan, the superintendent, locked the tools in the tool house and turned the key of the shaft house over to a daughter of Lewis Hamp, who lived with him. A part of the tools were afterward taken away. There was evidence tending to show that one Stell, acting as agent for McConnell, tried to get a new lease of the property but

that Hamp refused to make one. Nothing further appears to have been done at the mine until June 17, 1904, when Hamp and his wife leased the same premises for mining purposes to F. A. McClelland, who took possession of the mining premises, and was let into the structure around the mine shaft by a son of Lewis Hamp, with one of the keys left by Sullivan. McClelland appears to have been in possession of the mining premises for several months and during that time disposed of the spar at the top of the mine which had been mined and brought to the surface by parties representing the McConnell interest, as above set forth, and paid a royalty thereon to Hamp. Active mining operations seem to have been suspended in the fall of 1904 and after that time by another agreement, McClelland and those claiming under him appear to have paid a rental of $5.00 a month to Hamp which was continued until this suit was brought. On September 14, 1904, McClelland assigned his lease to appellant, the Ressa-Nell Mining and Milling Company. Shortly after September 18, 1905, at which time McConnell assigned his lease to Rose and Waggoner as aforesaid, Richard F. Taylor, acting as their agent, went to the mine, gathered up the tools and locked the doors of the building. Soon afterwards appellant placed George Boos and his son Charles in possession of the premises as its agents and about ten days later appellees caused the arrest of Boos and son for breaking a lock on one of the buildings. As soon as they were taken away Waggoner and Rose placed appellee H. H. Pilander in possession of the mines as their agent and on February 8, 1906, this suit was brought by appellant.

Appellant claims that possession of the premises was abandoned or given up by McConnell in the fall of 1903 and afterwards delivered by Hamp to McClelland, when the new lease was made in July, 1904. That after operations were suspended in the latter part of

1904, the Hamps held possession as agents of appellant until Boos and his son were put in possession; that the putting of locks on the doors by Taylor was a trespass; that the arrest of Boos and son was a mere subterfuge to get them off of the premises; that the subsequent occupancy of the premises was also an act of trespass and did not give legal possession thereof to the principals Waggoner and Rose. On the other hand it is claimed by appellees that McConnell's tools and machinery were continually on the premises from the time they were first placed there and that he delivered possession of the premises to Rose and Waggoner who collected the tools in one of the houses and secured them by a lock; that Lewis Hamp was on the premises at the time this was done and aided the agent of Rose and Waggoner in securing the tools and assuming possession; that Boos and son were mere trespassers whose temporary occupancy did not suspend the lawful possession of the premises by Rose and Waggoner.

Upon the trial in the court below this and another suit entitled Nevin McConnell v. Lewis Hamp et al., which was a suit for trespass upon the same premises, and is also here on appeal, were by agreement heard together by the court, without a jury. In this case the court below found the issues for appellee and entered judgment against appellant for costs. There is no controversy concerning the rules of law applicable to the issues presented in this case and while appellant claims the court was too liberal in admitting evidence on the part of appellee in two of three instances, yet we do not think the objections to such evidence well founded.

Practically the only question presented to this court is, whether the evidence was sufficient to sustain the finding of the court below in favor of appellees. That the lease from Hamp and wife to F. H. Haley was in form sufficient to vest Haley with an interest in the mineral specified and the right to remove the same,

subject only to the condition that developments in mining be made within three years, and that the lease was assignable under the statute, were determined in effect by this court in the case of McConnell v. Pierce, 116 Ill. App. 103, where a similar lease by one Jesse A. Crab to said F. H. Haley and by the latter assigned to the Hardin Mineral Company and by that company to said Nevin McConnell, was under consideration. Whether McConnell commenced the work of development under the lease before the expiration of the three years provided for and if not whether the right of forfeiture was waived by Hamp before making the lease to McClelland; whether McConnell was ever really out of possession by himself and his agents or his assignees and their agents after the first work of development was done; whether appellant or its agents ever had any actual possession of the premises and whether Pilander as agent of Rose and Waggoner was in peaceable possession of the premises at the time suit was brought, were all questions of fact for the determination of the court below and as the evidence in the case appears to us to justify the findings of that court, its judgment must be affirmed.

*Affirmed.*